IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DANNUNZIO, | ) |
|     Plaintiff, | ) Civil Action No. 2:21-cv-01984-MMB |
| v. | ) |
| LIBERTY MUTUAL INSURANCE CO. | ) |
|     Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Anthony Dannunzio claims that Defendant Liberty Mutual Insurance Company ("Liberty Mutual") violated the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §§ 1681, *et seq.,* Section 1681b(f) by accessing Plaintiff's consumer report without a permissible purpose under the law. Liberty Mutual has filed an unwarranted Motion to Dismiss (the "Motion") erroneously arguing that the Amended Complaint does not plead sufficient facts to establish that Liberty Mutual violated FCRA Section 1681b(f) or that Plaintiff suffered actual damages as a result of Liberty Mutual's conduct. Plaintiff's Amended Complaint, however, pleads substantial and sufficient facts on both subjects to establish that a plausible claim exists. Liberty Mutual's Motion here is wholly without merit and should thus be denied in its entirety.

## <u>PROCEDURAL HISTORY</u>

On April 29, 2021, Plaintiff filed his Complaint. *See* Dkt. No. 1. On June 28, 2021, Liberty Mutual filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). *See* Dkt. No. 5.

On July 8, 2021, Plaintiff submitted to the Clerk of Court a joint stipulation to extend his time to respond to the Motion to Dismiss. *See* Ex. A. On July 26, 2021, Plaintiff thereafter filed an Amended Complaint in lieu of responding to the Motion to Dismiss. *See* Dkt. No. 6. On August 2, 2021, this Court denied Liberty Mutual's motion to dismiss as moot. *See* Dkt. No. 7. On August 9, 2021, Liberty Mutual again filed a Motion to Dismiss pursuant to Rule 12(b)(6) in relation to Plaintiff's First Amended Complaint. *See* Dkt. No. 8.

## **LEGAL STANDARD**

Universally recognized as a notice pleading standard, Rule 8(a)(2) of the Federal Rules of Civil Procedure calls for a plaintiff filing a complaint in the federal courts to simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (calling Rule 8 a "simplified notice pleading standard.").

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "[T]he threshold level to be met by a plaintiff to withstand a motion to dismiss is very low." *Smith v. Weeks*, 2002 WL 31750203, at *5 (E.D. Pa. Dec. 9, 2002).

The Third Circuit after *Twombly* has consistently held that in considering a motion to dismiss pursuant to Rule 12(b)(6), the Court shall:

> accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff' and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) and *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (finding *Pinker* "remains an acceptable statement of the standard" and "finding [*Twombly*] confusing"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To the extent *Twombly* or more recently *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), impacts the standard of review of a Rule 12(b)(6) motion, the opinion merely clarifies that a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Third Circuit in *Phillips* noted that *Twombly* " 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." *Phillips*, 515 F.3d at 234 (*quoting Twombly*, 550 U.S. at 556).

## ARGUMENT

I. **PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH THAT A PLAUSIBLE CLAIM EXISTS AGAINST LIBERTY MUTUAL FOR VIOLATING FCRA SECTION 1681b(f) BY IMPERMISSIBLY ACCESSING PLAINTIFF'S CREDIT REPORT.**

A. Negligent and Willful Conduct

FCRA Section 1681b(f) prohibits users of credit reports from "obtain[ing] a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." 15 U.S.C. § 1681b(f)(1). Since Liberty Mutual is an insurance company the only permissible purpose for which Liberty Mutual

3

would be authorized to obtain a consumer's report ordinarily would be if it "intends to use the information in connection with the underwriting of insurance involving the consumer." 15 U.S.C. § 1681b(a)(3)(C). *See also Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011) ("The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA.")

Liberty Mutual effectively admits in its brief that it in fact obtained a copy of Plaintiff's credit report and offers no permissible reason to explain why it obtained the report other than characterizing its conduct as a "clerical error." Nonetheless, Liberty Mutual argues that Plaintiff supposedly has not alleged any facts that Liberty Mutual acted negligently or willfully.[1] Plaintiff, however, has alleged a host of facts which reasonably reflect that Liberty Mutual's conduct in obtaining Plaintiff's credit report was negligent and/or willful in violation of FCRA Section 1681b(f). These averments include allegations that Plaintiff has never had any prior business dealings with Liberty Mutual, never spoke to a Liberty Mutual representative and never completed any forms for Liberty Mutual. *See* 1st Am. Compl., at ¶12, 14. Plaintiff further alleged that he never gave consent for his credit report to be accessed and was never even informed by Liberty Mutual of what it had done. *See id.*, at ¶ 15.

Plaintiff further even addressed Liberty Mutual's unsubstantiated accusation in its original Motion to Dismiss intimating that it had obtained his credit report in connection with a transaction involving Plaintiff's mother. Plaintiff specifically plead that Plaintiff's mother does not recollect speaking to Liberty Mutual or inquiring about any Liberty Mutual products, and that his mother

---

[1] "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007).

never disclosed any identifying information about Plaintiff to Liberty Mutual nor communicated to Liberty Mutual that she possessed authority to consent on his behalf for any purpose. *See id.,* at ¶ 11, 13.

Plaintiff then went even further by alleging how this patent act of negligence as described above constituted reckless and/or willful misconduct. Plaintiff averred that: Liberty Mutual knowingly and intentionally falsely certified to the credit reporting agency Trans Union that it was inquiring for a permissible purpose relating to Plaintiff when in fact it had none; obtained Plaintiff's consumer report for a transaction that did not involve Plaintiff; knew that Plaintiff had no knowledge of what Liberty Mutual was doing or given consent to do so; and trained its representatives into deceiving potential customers into identifying family members as a matter of policy and practice so that it can deceitfully obtain consumer reports about those family members and review those reports to gauge whether those family members qualify for Liberty Mutual products. *See id.*, at ¶ 16-18.

The averments in the First Amended Complaint as outlined above more than satisfy the baseline criteria for pleading a plausible claim for negligent or willful misconduct in violation of FCRA Section 1681b(f). *See Haber v. Bank of Am., N.A.*, No. 14-0169, at *7-8 (E.D. Pa. June 27, 2014) ("All that the [plaintiff] must plead under [FCRA Section 1681b(f)] . . . is that [defendant] pulled their consumer reports without authorization.") Liberty Mutual's argument on this subject amounts to nothing more than propounding a possible counterargument to Plaintiff's claim that its conduct was supposedly a "clerical error." Resolving factual disputes, however, is not the purpose of a motion to dismiss. *See id.* at *8 ("Of course, all this starts to sound like a dispute of fact, and resolving those is not the task of a court at the motion to dismiss stage."). For these reasons, Liberty Mutual's Motion on this subject should be denied.

5

## B. Actual Damages

Liberty Mutual also erroneously argues that Plaintiff has not sufficiently alleged actual damages in his First Amended Complaint necessitating dismissal of his claim under FCRA Section 1681(o) for negligent misconduct.[2] Plaintiff has averred that he has suffered actual damages in the form of invasion of privacy and emotional distress. *See* 1st Am. Cmpl., at ¶ 19-20. Plaintiff further described the harm he experienced wherein his personal privacy was invaded by having his highly personal and private information from his credit report accessed and disclosed without his consent. *See id.* Plaintiff also described the significance of having such information misappropriated because a consumer report contains highly personal and private information including: the banks and lenders that Plaintiff conducts business with; the amount of credit Plaintiff has received and which is outstanding; Plaintiff's payment history; Plaintiff's private personal identifiers; location information about Plaintiff; and contact information for Plaintiff. *See id.*, ¶ 9. Plaintiff further averred that his emotional distress included anxiety, fear, worry and physical manifestations thereof as a result of said conduct. *See id,* at ¶ 20.

The averments in the First Amended Complaint as outlined above plainly set forth a plausible claim for actual damages under FCRA Section 1681b(f). In *Rogers v. Smith Volkswagen, Ltd.,* the court explained:

> When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state law-cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential." As in invasion of privacy cases, "the primary damage is the mental distress from having been exposed to public view."

---

[2] The existence of actual damages is irrelevant to Plaintiff's claim for willful misconduct under FCRA Section 1681n because Plaintiff is entitled to statutory damages in lieu of actual damages if liability exists.

No. 19-2567, at *9 (E.D. Pa. Apr. 6, 2020) (quoting *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001); *Time, Inc. v. Hill*, 385 U.S. 374, 385 n.9 (1967)).

Liberty Mutual is also incorrect in claiming that an award of actual damages in an FCRA case is "rare and requires compelling proof." In *Reilly v. Vivant Solar*, a court in this Circuit addressed similar claims by the defendant about actual damages for violations of FCRA Section 1681b(f) and noted that:

> The Third Circuit has held that proof of such injury does not require "corroborating testimony or medical or psychological evidence in support of the damage award." Such corroboration, our Circuit has held, "goes only to the weight of evidence of injury, not the existence of it." Therefore, if a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA. The fact that a plaintiff's injuries relate to the stress and anxiety caused by a defendant's conduct does not change that. Indeed, "this is precisely the kind of injury that Congress must have known would result from violations of the FCRA."

*Reilly v. Vivint Solar*, No. 18-12356, at *27-28 (D.N.J. June 8, 2020) (quoting *Cortez v. Trans Union, LLC,* 617 F.3d 688, 719-20 (3d Cir. 2010). For these reasons, Liberty Mutual's Motion on this subject should be denied.

### C. Punitive Damages and Attorney's Fees

Liberty Mutual then makes two misguided arguments relating to punitive damages and attorney's fees. FCRA Section 1681n makes clear that "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer [for] . .. such amount of punitive damages as the court may allow [and] . . . the costs of the action together with reasonable attorney's fees as determined by the court." FCRA Section

7

1681o similarly permits the collection of attorney's fees.[3] Accordingly, since Plaintiff has set forth a plausible claim for liability as discussed above, he is entitled to seek punitive damages and attorney's fees if successful in prosecuting those claims at trial.

Liberty Mutual cites to inapposite Third Circuit cases addressing the evaluation of punitive damages under the common law after a trial was conducted that have nothing to do with the statutory claim under the FCRA that Plaintiff has made here. *See Acosta v. Honda Motor Company*, 717 F.2d 828, 834 (3d Cir. 1983) (evaluating punitive damages post-trial in product liability matter); *Chuy v. The Philadelphia Eagles Football Club*, 595 F.2d 1265, 1277 (3d Cir. 1979) (evaluating punitive damages post-trial in common law intentional infliction of emotional distress matter); *Berroyer v. Hertz*, 672 F.2d 334, 340-341 (3d Cir. 1982) (evaluating punitive damages post-trial in common law malpractice matter).

Liberty Mutual then offers a frivolous argument that Plaintiff cannot receive attorney's fees and costs without proving actual damages. As stated above, Plaintiff has already pleaded a plausible claim for actual damages in his First Amended Complaint so the argument on its face is moot. Notwithstanding the mootness of the argument, Liberty Mutual offers no legal support for its claim on this subject and further ignores the fact that it flies in the face of FCRA Section 1681n which clearly permits a plaintiff to recover attorney's fees and costs without seeking actual damages. For these reasons, Liberty Mutual's Motion on this subject should be denied.

---

[3] "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer [for} . . . the costs of the action together with reasonable attorney's fees". 15 U.S.C. § 1681o.

## II. PLAINTIFF POSSESSES STANDING TO SUE.

Scattered throughout its brief, Liberty Mutual vaguely claims that Plaintiff somehow does not possess standing to bring his claims. Liberty Mutual offers no legal support for this argument and makes said argument in contradiction of the prevailing case law from the U.S. Supreme Court and Third Circuit.

The U.S. Supreme Court recently advised that "to have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion LLC v. Ramirez*, No. 20-297, at *5 (June 25, 2021). The Supreme Court further clarified in *Ramirez*, which involved violations of the FCRA, that:

> Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, **disclosure of private information**, and intrusion upon seclusion."

*Id.* at *13 (June 25, 2021) (citation omitted) (emphasis added). The Third Circuit also previously confirmed in an FCRA case that:

> In light of the congressional decision to create a remedy for the unauthorized transfer of personal information, a violation of FCRA gives rise to an injury sufficient for Article III standing purposes. Even without evidence that the Plaintiffs' information was in fact used improperly, the alleged disclosure of their personal information created a *de facto* injury.

*In re Horizon Healthcare Servs. Inc.*, 846 F.3d 625, 629 (3d Cir. 2017). A district court in this Circuit has also similarly found that standing exists in connection with a consumers claim for violation of FCRA Section 1681b(f). *See Mathews v. Verizon Commc'ns Inc.*, No. 19-21442, at *9 (D.N.J. Sep. 1, 2020) ("Congress has clearly expressed an intent to make the unauthorized disclosure of personal information redressable."). *See also Bultemeyer v. CenturyLink Inc.*, No. 17-15858, at *2 (9th Cir. Dec. 23, 2019) ("a plaintiff "has standing to vindicate her right to privacy

under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute")(quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017)).

Plaintiff here has alleged a redressable claim under FCRA Section 1681b(f) and articulated a concrete harm that falls squarely within both the Supreme Court's and Third Circuit's standard for conferring standing upon a consumer in an FCRA case. To the extent Liberty Mutual has challenged Plaintiff's standing here it should be denied.

### III. PLAINTIFF'S FIRST AMENDED COMPLAINT WAS TIMELY AND PROPERLY FILED.

Liberty Mutual also argues that Plaintiff's First Amended Complaint was not timely filed which is false. Rule 15(a)(1)(B) permits a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b). Local rules, however, require a respondent to a motion to file a response within 14 days. *See* Local Rule, 7.1(c). Plaintiff filed a joint stipulation agreed upon with Liberty Mutual to extend his time to respond to the original Motion to Dismiss by an additional two weeks. Plaintiff thereafter file his First Amended Complaint within that revised deadline. Liberty Mutual appears to be arguing that the extension agreed upon by the parties would not have included an opportunity to file an amended pleading in lieu of a response to the original Motion. Liberty Mutual offers no legal support for this concept. Additionally, the Court has already dismissed Liberty Mutual's original Motion to Dismiss as moot. Liberty Mutual's argument on this subject should also be denied.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion To Dismiss Plaintiff's Amended Complaint in its entirety.

To the extent the Motion is granted, Plaintiff respectfully requests leave to amend as Liberty Mutual does not offer any specific reason why an amendment would be futile and leave to

amend in any circumstance where amendment is not clearly futile should be liberally granted. *See Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012).

Respectfully Submitted,

**GORSKI LAW, PLLC**

/s/ Gregory Gorski
GREGORY GORSKI
PA Attorney ID: 91365
1635 Market Street, Suite 1600
Philadelphia, PA 19103
Tel: 215-330-2100
Email: greg@greggorskilaw.com

Attorneys for Plaintiff

Dated: August 23, 2021