**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY DANNUNZIO,**<br><br>v.<br><br>**LIBERTY MUTUAL INSURANCE CO.** | **CIVIL ACTION**<br><br>**NO. 21-1984** |

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

**Baylson, J.**                                                      **November 5, 2021**

## I.      Introduction

Plaintiff Anthony Dannunzio brings this action against Liberty Mutual alleging that Defendant Liberty Mutual accessed Plaintiff's credit report without consent in violation of § 1681(n) and § 1681(o) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Federal jurisdiction in this case was invoked under § 1681p of FCRA.

## II.      Procedural History

In response to Plaintiff's initial complaint, filed April 29, 2021 (Dkt. No. 1), Defendant filed its first Motion to Dismiss. (Dkt. No. 5).  The parties jointly stipulated on July 8, 2021 that Plaintiff's deadline to respond to Defendant's Rule 12(b)(6) Motion be extended to July 26, 2021. (Dkt. No. 9-2 at 3).  In lieu of a response, Plaintiff filed his First Amended Complaint on July 26, 2021, which Defendant now seeks to dismiss under 12(b)(6) for failure to state a claim and Fed. R. Civ. P. 15 (a)(1)(B) for filing an amended pleading out of time. (Dkt. No. 8).

## III.      Plaintiff's Factual Allegations

The facts as alleged by Plaintiff are as follows:  On or about May 24, 2019, Defendant Liberty Mutual acquired Plaintiff's credit information by pulling a copy of his consumer report

1

from TransUnion.  1st Am. Compl., at ¶ 8.  This consumer report included highly personal and private information belonging to Plaintiff, such as: the banks and lenders with whom Plaintiff conducts business; the amount of credit Plaintiff has received; Plaintiff's payment history; Plaintiff's private personal identifiers; and Plaintiff's location information and contact information.  Id. at ¶ 9.

Plaintiff alleges that he has never had any prior business dealings with Liberty Mutual.  Id. at ¶ 14.  Plaintiff further alleges that, at the time that his consumer report was accessed by Liberty Mutual, Plaintiff had not spoken to any Liberty Mutual representative nor completed any forms for Liberty Mutual.  Id. at ¶ 12.  Liberty Mutual claims that it accessed Plaintiff's consumer report while responding to an inquiry about a Liberty Mutual product submitted by Plaintiff's mother.  Id. at ¶ 10, Plaintiff alleges he was unaware of any interactions taking place between Liberty Mutual and his mother.  Id. at ¶ 11.  To Plaintiff's knowledge, his mother never disclosed any identifying information about him to Liberty Mutual nor communicated to Liberty Mutual that she possessed authority to consent on behalf of Plaintiff for any purpose.  Id. at ¶ 13.

## IV.   Parties' Contentions

(a) Defendant's Motion to Dismiss

Defendant contends that Plaintiff has failed to state a claim for a violation of FCRA and that Plaintiff's Amended Complaint, including all its claims for damages, should be dismissed with prejudice.  Dkt. No. 8.  First, Defendant argues that Plaintiff's Amended Complaint is untimely filed under Rule 15.  Dkt. No. 8-1 at 7.  Rule 15 allows a party to amend its pleading once as a matter of course 21 days after serving it or, if the party's pleading is one to which a responsive pleading is required, within 21 after service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1)(A)(B).  Plaintiff's First Amended Complaint was filed 28 days after service of

Defendant's responsive pleading. Dkt. No. 8-1 at 7.  Defendant argues that Plaintiff never obtained Defendant's consent or sought leave from the Court to amend the complaint out of time.  Id.

Defendant argues that even if Plaintiff's Complaint should not be dismissed for timeliness, Plaintiff has nonetheless failed to state a claim for relief because FCRA is not a strict liability statute and Plaintiff failed to allege that Defendant had negligently, willfully, or recklessly violated its provisions.  Dkt. No. 8-1 at 6.  Though Defendant admits to pulling Plaintiff's credit report, it contends that was possibly a mere "clerical or system error."  Dkt. No. 8-1 at 5.  Defendant also disputes whether Plaintiff has standing to proceed with his FCRA claim because he had merely demonstrated a hypothetical injury rather than an injury-in-fact.  Dkt. No. 8-1 at 14.

Even if Plaintiff's FCRA claim is adequately pleaded and allowed to proceed, Defendant argues that Plaintiff should be limited to statutory damages because Plaintiff's claims for actual damages are nothing more than bare, vague, and unsubstantiated allegations.  Dkt. No. 8-1 at 13-14.  Defendant argues that Plaintiff has not alleged that Plaintiff's credit information was shared with any third parties or experienced any harm to his credit reputation as a result of Defendant's conduct.  Id.  While plaintiffs suing under FCRA can collect actual damages for emotional distress even absent economic injury, Defendant contends that such damage awards are rare and require compelling proof which Plaintiff has failed to provide.  Id.  Defendant similarly challenges Plaintiff's claim for attorney's fees and costs on the basis that Plaintiff had not sufficiently alleged actual damages.  Dkt. No. 8-1 at 16.  Defendant also moves this Court to dismiss Plaintiff's request for punitive damages with prejudice because punitive damages are seldom awarded absent a willful violation of FCRA and Plaintiff has not pleaded any facts that establish malicious, willful, or wanton conduct on Defendant's part.  Dkt. No. 8-1 at 14-16.

(b) Plaintiff's Response in Opposition

In response to Defendant's argument that Plaintiff's Amended Complaint is untimely, Plaintiff points out that it was filed within the date set by the joint stipulation signed by both Plaintiff and Defendant which extended the deadline for Plaintiff to respond to Defendant's motion to dismiss until July 26.  Dkt. No. 9-2.  Plaintiff believes that the joint stipulation extending his deadline to reply to Defendant's motion encompasses an Amended Complaint in lieu of a responsive pleading, whereas Defendant reads it as only authorizing Plaintiff to file a responsive pleading.  Dkt. No. 9-1 at 10.

Addressing Defendant's arguments that Plaintiff has failed to allege a negligent, willful, or reckless violation of FCRA, Plaintiff argues that he has alleged "a host of facts" from which one can reasonably infer that Defendant was negligent or willful in impermissibly obtaining Plaintiff's credit report, including that Plaintiff had never had any prior business relationship with Defendant, spoke with any representatives of Defendant, or filled out any forms for Defendant.  Dkt. No. 9-1 at 4.  Plaintiff also alleges that he never gave consent for Defendant to access his credit report and was never informed by Defendant that it had done so.  Id.  Plaintiff argues that Defendant's statement that the alleged violation was nothing more than a "clerical or system error" represents a factual dispute that the Court should not resolve at the motion to dismiss stage.  Dkt. 9-1 at 5.  In response to Defendant's assertion that it had obtained Plaintiff's consumer report pursuant to a transaction with his mother, Plaintiff asserts that his mother never disclosed any identifying information about Plaintiff to Defendant nor communicated to Defendant that she possessed authority to consent on his behalf for any purpose.  Dkt. 9-1 at 4-5.

Plaintiff argues that Defendant's conduct amounted to willful behavior because he alleges that Defendant "knowingly and intentionally falsely certified to Trans Union" that it had a permissible purpose to access Plaintiff's consumer report and in fact "trained its representatives

4

into deceiving potential customers into identifying family members as a matter of policy and practice so that it can deceitfully obtain consumer reports about those family members and review those reports to gauge whether those family members qualify for Liberty Mutual products." Dkt. No. 9-1 at 5.

Addressing Defendant's damages argument, Plaintiff states that he has adequately alleged actual damages in the form of invasion of privacy and emotional distress and sufficiently described the harm he experienced by having his private information from his credit report exposed. Plaintiff states that Defendant's argument that awards for emotional distress require external corroboration is unavailing because the Third Circuit has solely required this evidence to show "the weight of evidence of injury, not the existence of it." Dkt. No. 9-1 at 7; see Cortez v. Trans Union, LLC, 617 F.3d 688, 719-20 (3d Cir. 2010). Moreover Plaintiff asserts that FCRA clearly authorizes the collection of punitive damages for willful violations of FCRA and permits recovery of attorney's fees and costs even apart from actual damages. Dkt. No. 9-1 at 8.

Finally, Plaintiff also addresses his standing to sue. Plaintiff relies on the Supreme Court's recent decision in TransUnion LLC v. Ramirez, where the Court identified "disclosure of private information" as an injury sufficient to confer Article III standing. No. 20-297, at *5 (June 25, 2021). Under this recent decision and prior Third Circuit precedent, Plaintiff argues that he has alleged a concrete harm sufficient to confer standing. Dkt. No. 9-1 at 9; see In re. Horizon Healthcare Servs. Inc, 846 F.3d 625, 629 (3d Cir. 2017) (holding that a violation of FCRA gives rise to an injury sufficient for Article III standing purposes).

## V.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must set forth enough factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When assessing the merits of a Rule 12(b)(6) motion, courts must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party. Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

## VI.    Relevant Case Law

### i.    Article III Standing

To have standing to sue under Article III, a plaintiff must have suffered a concrete and particularized harm.  The Supreme Court addressed the requirements of Article III standing in the context of an FCRA claim in the recent case of TransUnion LLC v. Ramirez.  141 S.Ct. 2190 (2021).  The Court noted that concrete harms for Article III purposes include both tangible harms (such as physical and monetary harm) as well as intangible harms (such as reputational harms, disclosure of private information, and intrusion upon seclusion).  Id. at 2204; see Meese v. Keene, 481 U.S. 465, 473 (1987) (reputational harms); Davis v. Federal Election Comm'n, 554 U.S. 724, 733 (2008) (disclosure of private information); Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 462 (7th Cir. 2020) (intrusion upon seclusion).  That said, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." TransUnion LLC, 141 S. Ct. at 2205.  Damages for emotional distress are cognizable harms under the FCRA.  Cortez v. Trans Union, LLC, 617 F.3d 688, 719 (3d Cir. 2010) ("Thus, damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses"); but

see Becker v. Early Warning Services, LLC No. 19-5700 2020 WL 2219142, at *1-*2 (E.D. Pa.,
May 7, 2020) (holding that plaintiff's claims of emotional distress did "not amount to concrete
harms" because they stemmed "solely from the consumer's awareness that a consumer reporting
agency possesse[d]" imprecise information).

To determine whether the alleged harm is "concrete" for purposes of Article III, courts
must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm
'traditionally' recognized as providing a basis for a lawsuit in American courts." Id. at 2204 (citing
Spokeo, Inc. v. Robins, 578 U. S. 330, 341 (2016)). Courts must inquire as to "whether plaintiffs
have identified a close historical or common-law analogue for their asserted injury," though "an
exact   duplicate   in   American   history   and   tradition"   is   not   required.   Id.
In the TransUnion case, the Court ruled that those plaintiffs who had their inaccurate credit reports
sent out to third parties had standing, for they had suffered a concrete harm akin to the traditional
tort of defamation.  Id. at 2209.  However, plaintiffs whose inaccurate credit reports had not been
sent to third parties did not have standing, since they had merely suffered "bare procedural
violation[s], divorced from any concrete harm."  Id. at 2209-2210 (citing Spokeo, 578 U.S., at
341).

Third Circuit precedent has also recognized that mere procedural violations of a statute are not
always adequate for Article III standing.  See, e.g., In re Horizon Healthcare Services Inc. Data
Breach Litigation, 846 F.3d 625, 635 (3d Cir. 2017).  Like the Supreme Court in TransUnion LLC,
however, the Third Circuit has also recognized in several contexts that the disclosure or
unauthorized collection of private information is sufficiently injurious to generate Article III
standing.  For example, in an action for a violation of FCRA brought by plaintiffs against a health
insurance company, the Third Circuit analogized the disclosure of plaintiffs' private information

to the traditional tort of invasion of privacy and held that such unauthorized disclosures were a cognizable harm for Article III standing purposes.  Id., at 638-639; see also St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 898 F.3d 351, 357–58 (3d Cir. 2018) (holding that the exposure of a plaintiff's account information implicates the traditional tort of invasion of privacy "and thus is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts.").  However the Third Circuit does not recognize standing in other cases where a procedural violation of the FCRA resulted in the disclosure of private information to none but the plaintiff.  Kamal v. J. Crew Group, Inc., 918 F.3d 102 (3d Cir. 2019); see also Freeman v. Early Warning Services, LLC, 443 F.Supp.3d 581 (E.D. Pa. 2020).

### ii.    Willful or Reckless FCRA Violations

To show a willful violation of the FCRA, a plaintiff must prove that the defendant "'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" Cushman v. Trans Union Corp, 115 F.3d 220, 226 (3d Cir. 1997); see Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 248 (3d Cir. 2012) (holding that a willful violation of the FCRA occurs when defendant's conduct is "objectively unreasonable in light of legal rules that were clearly established at the time").  Allegations about the objective reasonableness of defendant's conduct are unnecessary in cases where the statutory language in unambiguous.  Smith v. HireRight Solutions, Inc., 711 F.Supp.2d 426, 435-436 (E.D. Pa. 2010) (rejecting defendant's argument that plaintiff had to allege that defendant's interpretation was objectively unreasonable because "the statutory text at issue here has a plain and clearly ascertainable meaning" ).  To plead negligence, plaintiff must show that: "1) inaccurate information was included in a consumer's credit report; 2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy;

3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 963 (3d Cir. 1996).

**VII.   Discussion**

i.      Standing

As a preliminary matter, the Court will not penalize Plaintiff for the untimely filing of the Amended Complaint considering the parties' joint stipulation is ambiguous regarding whether Plaintiff can file an amended complaint in lieu of a response to Defendant's motion to dismiss. <u>Kabbaj v. Am. Sch. of Tangier</u>, 445 F. App'x 541, 545 (3d Cir. 2011) (holding that the filing of an invalid notice did not end the case where a "joint stipulation is not clear and unambiguous"). Nor should the Plaintiff be denied a chance at relief based upon any mistakes of his counsel.

Plaintiff has standing under Article III under the principle enunciated in <u>TransUnion</u> and <u>In re Horizon</u>. Here Plaintiff has suffered an unauthorized disclosure of his private information to Liberty Mutual, and thereby suffered a harm analogous to the traditional tort of invasion of privacy. <u>In re Horizon Healthcare Services Inc. Data Breach Litigation</u>, 846 F.3d at 638-639; <u>St. Pierre</u>, 898 F.3d at 357–58. Plaintiff's claims are distinguishable from the <u>TransUnion</u> class members who were denied standing because their allegedly inaccurate credit reports—lawfully held and compiled by TransUnion—were not disclosed or disseminated to third parties. In contrast, Plaintiff alleges that his private information was unlawfully disclosed to Liberty Mutual after Liberty Mutual fraudulently asserted that Plaintiff and his mother inquired about its product offerings. Plaintiff's claim against Liberty Mutual could therefore also be analogized to the traditional tort of conversion, as it involved "[a] deliberate taking of another's personal property without consent…." <u>Cenna v. United States</u>, 402 F.2d 168, 170 (3d Cir. 1968), or fraud in the inducement, as it involved a false material representation that Plaintiff had engaged Liberty Mutual

made with the intent of misleading TransUnion. <u>Freeman v. Pittsburgh Glass Works, LLC</u>, 709 F.3d 240, 257 (3d Cir. 2013).  Similarly, Plaintiff's claim of damages for emotional distress are sufficiently concrete for Article III purposes, since it is based on the exposure of his private information to Defendant rather than a mere procedural violation of the FCRA or a fear of hypothetical future harm.

ii.     Allegations

Plaintiff has plausibly alleged that Defendant pulled Plaintiff's consumer report without a permissible purpose because Defendant is an insurance company that could only permissibly pull Plaintiff's consumer report for the sake of underwriting one of its policies.  But Plaintiff has alleged that he had no business relationship with Defendant, which, if true, would exclude the only permissible purpose Defendant could have had.  The statutory language is clear and unambiguous, and Defendant has not advanced an interpretation of the statute under which its alleged conduct would have been lawful.  <u>Smith v. HireRight Solutions, Inc.</u>, 711 F.Supp.2d 426, 435-436 (E.D. Pa. 2010) (rejecting defendant's argument that plaintiff had to allege that defendant's interpretation was objectively unreasonable because "the statutory text at issue here has a plain and clearly ascertainable meaning" and "Defendant does not even attempt to argue . . . that the FCRA can be reasonably interpreted to condone [its] practice").  While it may be true that Defendant pulled Plaintiff's report due to a mere clerical error, such is a question of fact which the Court cannot entertain at this stage of the proceedings.  For now, Plaintiff's allegations to the contrary must be construed as true and in their most favorable light.  <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir.2006).

To plead that Defendant willfully violated the FCRA at the motion to dismiss stage, Plaintiff need only plausibly allege that Defendant engaged in willful misconduct.  <u>Smith v.</u>

10

HireRight Sols., Inc., 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010) (acknowledging that Plaintiff is not expected to plead a willful FCRA violation with specificity "absent the benefit of discovery"); Haber v. Bank of America, N.A., No. 14-0169 2014 WL 2921659, at **5, n. 4  (E.D. Pa. June 27, 2014) (declining to determine willfulness at the motion to dismiss stage).  Plaintiff has met this low bar.

    iii.    Damages

As noted above, Plaintiff has adequately stated a claim for actual damages based on invasion of privacy and emotional distress.  While Plaintiff's description of the actual damages of emotional distress that he has suffered could be more detailed, it is sufficient to survive a motion to dismiss.  Just as it is too early in the litigation to dismiss Plaintiff's claims for willful or negligent violation of the FCRA, so too is it too early in the litigation to dismiss Plaintiff's claim for punitive damages, which requires Plaintiff to show that Defendant's conduct was willful.

Plaintiff's claim for attorneys' fees and costs shall be allowed to proceed.   Under §1681n(a)(3), a plaintiff may collect attorney's fees and costs "in the case of any successful action to enforce any liability under this section."   Because §§ 1681(a)(1)(A) and 1681n(b) allow a plaintiff to recover statutory damages in lieu of actual damages against a defendant that has willfully or knowingly violated the FCRA, it is not necessary to for a plaintiff to prove actual damages to collect attorneys' fees and costs.   Here, Plaintiff has adequately alleged actual damages, but even if he had not that would not preclude his claim for attorneys' fees as long as defendant willfully violated the statute.   It is only for negligent violations of the FCRA that it is necessary for a plaintiff to prove actual damages, since one cannot successfully establish liability for negligent noncompliance without showing actual damages resulting from defendant's negligence under 1681o(a).

**VIII.   Conclusion**

For the reasons set forth above, Liberty Mutual's Motion to Dismiss is denied.  An Order

consistent with this Memorandum will be docketed separately.